UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

**J.T.**, Individually and on behalf of D.T.;
**K.M.**, Individually and on behalf of M.M. and S.M.;
**J.J.**, Individually and on behalf of Z.J.;
**C.N.**, Individually and on behalf of V.N.; and,
All Others Similarly Situated,

                              Plaintiffs,                      **20-cv-5878 (CM)**

-    against -

**BILL de BLASIO**, in his official capacity as the
Mayor of New York City; **RICHARD CARRANZA**,
in his official capacity as the Chancellor of the New
York City Department of Education; the **NEW YORK
CITY DEPARTMENT OF EDUCATION**; the **SCHOOL
DISTRICTS IN THE UNITED STATES**; and the
**STATE DEPARTMENTS OF EDUCATION IN THE
UNITED STATES**,

                              Defendants.
----------------------------------------------------------------------x


## MEMORANDUM OF LAW IN OPPOSITION TO ORDER TO SHOW CAUSE TO DISMISS COMPLAINT AGAINST SCHOOL DISTRICTS NOT LOCATED WITHIN NEW YORK STATE

Peter G. Albert, Esq.
Brain Injury Rights Group, Ltd.
Attorneys for Plaintiffs
300 East 95th Street – Suite 130
New York, New York 10128
(646) 850-5035

1

**Table of Contents**

## **Table of Cases & Authorities**

*A.I. Intl Corporate Holdings, Inc. v. SurgiCare, Inc.*,
2003 U.S. Dist. LEXIS 20561, at *8 (S.D.N.Y. Nov. 17, 2003). ………………………

*Doe v. E. Lyme Bd. Of Educ.*, 790 F.3d 440, 445 (2d Cir. 2015).………………………

*Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 45-46 …………………………

*F.S. v. District of Columbia*, 2007 U.S. Dist. LEXIS 27520 (D.D.C. 2007)………….

*Honig v. Doe*,  484 U.S. 305, 313 (1988) ……………………………………………….

*Knight v. District of Columbia*, 877 F.2d 1025, 1028 (D.C. Cir. 1989)………………

*McKenzie v. Smith*, 771 F.2d 1527-33 (D.C. Cir. 1985) ……………………………….


18 § U.S.C. 1964(a), Racketeer Influenced and Corrupt Organization Act ("RICO")…
20 U.S.C. §1400, et seq. ("IDEA") ……………………………………………………….
28 U.S.C. §1331…………………………………………………………………………
28 U.S.C. §1343(a) ……………………………………………………………………..
29 U.S.C. §1332(d) ……………………………………………………………………….
34 C.F.R. §300.106 ……………………………………………………………………….
Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA") ……….

N.Y. CPLR §302(a)……………………………………………………………….

**PRELIMINARY STATEMENT**

This memorandum of law is submitted in opposition to Your Honor's Order to Show Cause, dated September 2, 2020 (Dkt. Entry No. 84), why Plaintiffs' complaint should be dismissed against all Defendant school districts located within States other than New York. For the reasons set forth below, it is respectfully submitted that Plaintiffs' Complaint, and their Application for an Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, should not be dismissed since this Court has jurisdiction over all school districts for purposes of the instant matter.

**STATEMENT OF FACTS**

This action was brought by PLAINTIFFS (*See* Appendix A of Complaint, Dkt. Entry No. 1), who are parents and/or natural guardians ("Plaintiff-Parent") of students classified under federal law as disabled and having an educational disability, and the Students themselves ("Plaintiff-Student"), on their own behalf and on the behalf of all others similarly situated against Defendants BILL de BLASIO, in his official capacity as the Mayor of New York City, RICHARD CARRANZA, in his official capacity as the Chancellor of New York City Department of Education, the NEW YORK CITY DEPARTMENT OF EDUCATION, the SCHOOL DISTRICTS IN THE UNITED STATES (*See* Appendix B of Complaint, Dkt. Entry No. 1), and the STATE DEPARTMENTS OF EDUCATION IN THE UNITED STATES (*See* Appendix C of Complaint, Dkt. Entry No. 1) (collectively "Defendants").

As the novel coronavirus ("Covid 19") began spreading across the United States during the month of March 2020, state Governors around the nation directed Defendant School Districts to unilaterally close school buildings and required all students and school staff to remain home. (*See* Pars. 6 and 7, Complaint Dkt. Entry No. 1). In-person instruction was changed to "remote learning," if any. (*See* Par. 7, Complaint, Dkt. Entry No. 1).

4

Defendant State Education Departments ("SEDs") throughout the United States began issuing guidance to school districts (a/k/a local educational agencies or "LEAs") within their states, about how to provide educational services to students during the coronavirus shutdown. (*See* Par. 12, Complaint, Dkt. Entry No. 1).

Despite requests from school districts and state education departments across the country, the Secretary of Education of the United States Department of Education ("USDOE") refused to grant waivers from the requirements of the federal Individuals with Disabilities Education Act, 20 U.S.C. §1400, et seq. ("IDEA") from providing disabled students with a FAPE ("free appropriate public education") or from the IDEA's procedural requirements during the coronavirus crisis.[1] While the USDOE provided flexibility in the provision of educational services during the coronavirus crisis, there has been no change in relevant federal or state education law.

On March 12, 2020, the USDOE offered guidance to Defendants reinforcing the Plaintiffs' rights during the coronavirus crisis. ("[S]chools must ensure that, to the greatest extent possible, each student with a disability can be provided the special education and related services identified in the student's individualized education program ("IEP") developed under the IDEA, or a plan developed under Section 504.").[2] And, on March 21, 2020, USDOE reinforced that guidance.[3]

On April 27, 2020, the USDOE presented a Report to Congress from USDOE Secretary Betsy DeVos which specifically did not recommend giving school districts the option to bypass major parts of federal special education law.[4] "While the Department has provided extensive

---

[1] https://edsource.org/2020/disability-rights-groups-school-administrators-spar-over-possible-changes-to-special-education-laws/628376

[2] March 12, 2020, Fact Sheet by USDOE: https://www.isbe.net/Documents/qa-covid-19-03-12-2020.pdf

[3] March 21, 2020, Supplemental Fact Sheet by USDOE: https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/rr/policyguidance/Supple%20Fact%20Sheet%203.21.20%20FINAL.pdf

[4] https://www2.ed.gov/documents/coronavirus/cares-waiver-report.pdf?utm_content=&utm_medium=email&utm_name=&utm_source=govdelivery&utm_term=

flexibility to help schools transition, there is no reason for Congress to waive any provision designed to keep students learning."[5]

Starting in July 2020, Governors around the country rescinded their executive orders and allowed school buildings to reopen for extended school year ("ESY") special education students, as defined by 34 C.F.R. § 300.106. (*See* Par. 16, Complaint, Dkt. Entry No. 1).

School districts throughout the United States were aware they were not in compliance of the IDEA, Section 504 or the ADA.  Defendants knowingly, willfully and deliberately violated the rights of Plaintiff-Students and Plaintiff-Parents by acting in bad faith.  (*See* Par. 17-25, Complaint Dkt. Entry No. 1). The Defendants unilaterally closed its schools and required students and staff to remain home, thereby altering the status quo of the educational programs of the Plaintiff-Students.  The Defendants essentially failed to provide Plaintiff-Students with the special education and related services set forth in their IEPs.  In this regard, and due to the actions of Defendants, they denied Plaintiffs pendency rights under IDEA, blatantly disregarded procedural safeguards, and simply failed to comply with long-established federal laws and regulations.

First, the Defendants unilaterally, substantially, and materially altered the location of where the Plaintiff-Students were to receive services: from a school classroom to the most restrictive environment along the continuum of services, the Plaintiff-Students' home.  A unilateral change from a classroom to total isolation at home, was also violative of the requirement to educate disabled students in the "least restrictive environment." *Honig v. Doe*, 484 U.S. 305, 313 (1988).

Second, the Defendants unilaterally, substantially, and materially altered the delivery of these services by precluding the Plaintiff-Students from receiving any in-person services by special education teachers or related service providers, as required by the Plaintiff-Students' IEPs.

---

[5] https://www.ed.gov/news/press-releases/secretary-devos-reiterates-learning-must-continue-all-students-declines-seek-congressional-waivers-fape-lre-requirements-idea

Third, no Plaintiff-Students' IEP provides for the remote provision of special education or related services. Rather, the Plaintiff-Students' IEPs require these services to be provided as a direct service to the Plaintiff-Students. In most instances, Defendants also altered the frequency and duration of Plaintiff-Students' related services, if they provided them at all.

There is no "pandemic exception" to the IDEA and if a student's educational program becomes unavailable, then the school district must find a comparable alternative placement. See *Knight v. District of Columbia*, 278 U.S. App. D.C. 237, 877 F.2d 1025, 1028 (D.C. Cir. 1989). When a student's educational program becomes unavailable, the stay-put provision requires that a similar program be found for the student. *See McKenzie v. Smith*, 771 F.2d 1527-33 (D.C. Cir. 1985); *F.S. v. District of Columbia*, 2007 U.S. Dist. LEXIS 27520 (D.D.C. 2007).

Plaintiffs disagree that Governors' school closure orders supersede federal laws (i.e., IDEA, Section 504, ADA) protecting the rights of Plaintiff-Students. Nevertheless, this is no longer a legal issue since Governors have rescinded those orders relating to special education students as of July 2020. (*See* Appendix D of Complaint, Dkt. Entry No. 1).

As a result of the violations committed by the Defendants, Plaintiff-Parents seek independent evaluations for the purpose of determining the extent to which the Plaintiff-Students exhibit regression and/or loss of competencies and abilities due to the loss of, or substantial change to, the Plaintiff-Students' educational program. Additionally, Plaintiff-Parents seek to have their respective LEAs' Committee on Special Education promptly convene after the completion of the requested independent evaluations for the purpose of ascertaining the Plaintiff-Students' current needs and abilities to develop modified IEPs reflecting the loss or substantial and material alterations of Plaintiff-Students' special education and/or related services. Further, and as a result of the gross violations committed by the Defendants, Plaintiff-Parents seek compensatory damages

from their respective LEAs. Compensatory education is an award of educational services designed to remedy a deprivation in the child's education. *Doe v. E. Lyme Bd. Of Educ.*, 790 F.3d 440, 445 (2d Cir. 2015).

Due to the deliberate indifference, intentional and willful actions of the Defendants, Plaintiff-Parents were required to "fill in" and compensate for the failure of their school district (LEA) and either lost income, incurred out-of-pocket expenses, and/or experienced loss of employment. Accordingly, Plaintiff-Parents seek compensatory damages and punitive damages.

Pursuant to the IDEA, Plaintiff-Parents sent statutory Ten Day notices to their respective LEAs advising that the LEA improperly modified Plaintiff-Students' IEPs, denied their pendency rights under Section 1415(j) of the IDEA, and requesting relief for such violations.

Pursuant to the IDEA, Plaintiff-Parents filed due process complaints with their LEAs alleging violations of the IDEA and Section 504 by unilaterally modifying the Plaintiff-Students' IEPs and failing to maintain their pendency programs and placements.

## POINT I

### THIS COURT HAS PROPER JURISDICTION OVER ALL DEFENDANT SCHOOL DISTRICTS

This Court has subject matter jurisdiction herein pursuant to 28 U.S.C. §1331, in that claims arise under federal law (IDEA, Section 504 and ADA), 28 U.S.C. §1343(a), in that the claims arise under laws providing for the protection of civil rights, and under 42 U.S.C. § 1983.

This Court has subject-matter jurisdiction over the Defendant School Districts in this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are more that 100 or more Members in the proposed Class and subclass; (b) at least some Members of the proposed Class have a different citizenship

from Defendants; and (c) the claims of the proposed Members of the Class exceed the sum or value of five million dollars ($5,000,000) in the aggregate. *See* 29 U.S.C. § 1332(d)(2).

This Court has personal jurisdiction over the Plaintiffs because they submit to the jurisdiction of this Court.

This Court has personal jurisdiction over all Defendant School Districts herein either by virtue of the presence of some of the Defendants in this district or long-arm jurisdiction over all others. Specifically, several Defendants have a presence in the district based on their residency or principal place of business being within the state. *See, e.g., A.I. Intl Corporate Holdings, Inc. v. SurgiCare, Inc*., 2003 U.S. Dist. LEXIS 20561, at *8 (S.D.N.Y. Nov. 17, 2003).  And, this Court has long-arm jurisdiction over Defendant School Districts, and out-of-state education departments ("Defendant-State Education Departments"), based on several grounds. *See* N.Y. CPLR §302(a).

The Defendant School Districts all receive federal funding pursuant to the IDEA. This federal funding includes Medicare and Medicaid reimbursement, which is administered through local agencies such as The Center of Medicare and Medicaid Services ("CMS") located here in New York.[6] The federal funds each Defendant School District receives is a conferred benefit which is concomitant with an obligation to defend suits in a federal district court forum.

Furthermore, upon information and belief, the Defendant-School Districts directly transact business in this judicial district through their pension fund and bond investments activities with New York-based financial institutions.  *See* CPLR 302(a)(1).

Also, upon information and belief, having received federal funds by electronic means and having failed to provide special education students in various school districts across the country with the services required by their IEPs, the Defendant-School Districts are subject to the personal

---

[6] https://www.cms.gov/Medicare-Medicaid-Coordination/Medicare-and-Medicaid-Coordination/Medicare-Medicaid-Coordination-Office/FinancialAlignmentInitiative/New-York

jurisdiction of this Court based on their violations of the civil section of the Racketeer Influenced and Corrupt Organization Act ("RICO"). *See* 18 U.S.C. §1964(a). Specifically, through their actions which caused, *inter alia*, the filing of fraudulent claims, which violated 18 U.S.C. §1341 (mail fraud) and §1343 (wire fraud).

Additionally, upon information and belief, Defendant School Districts, having received federal funds by electronic means and having failed to provide special education students with the services required by their IEPs, violated the civil section of RICO. Se*e* 18 U.S.C. §1964(a). Specifically, through their actions which caused, inter alia, False Certification Fraud, Implied Certification Fraud and Worthless Service Fraud, Defendant-School Districts violated 18 U.S.C. §1341 (mail fraud), 18 U.S.C. §1343 (wire fraud), 18 U.S.C. § 2314 (fraudulent transfer of money), 18 U.S.C. §2315 (fraudulent receipt of money) and 18 U.S.C. §1344 (bank fraud).

The Defendant School Districts engaged in these "prohibited activities" consisting of predicate acts which constitute a "pattern of racketeering activities" 18 U.S.C. §§ 1961-1968. The Defendant-School Districts are also subject to civil liability under 31 U.S.C. §3729(a) for those who receive federal funds fraudulently. The United States Justice Department relies on this provision to curb the abuse of federal funds in programs ranging from Medicaid to disaster assistance.[7]

FALSE CERTIFICATION FRAUD: The Defendant-School Districts submitted a "false claim" when its representatives submitted fraudulent representations that A) the IEPs they created

---

[7] *See* Press Release, U.S. Dep't of Justice, Justice Department Recovers Over $4.7 Billion from False Claims Act Cases in Fiscal Year 2016 (Dec. 14, 2016), https://www.justice.gov/opa/pr/justice-department-recovers-over-47-billion-false-claims-act-cases-fiscal-year-2016 [https://perma.cc/PEJ3-NW4B] ("The False Claims Act is the government's primary civil remedy to redress false claims for government funds and property under government programs and contracts relating to such varied areas as health care, defense and national security, food safety and inspection, federally insured loans and mortgages, highway funds, small business contracts, agricultural subsidies, disaster assistance, and import tariffs.").

were knowingly not in compliance with IDEA and they could not implement these IEPs, thereby denying the students a FAPE, and B) when their service providers knowingly misrepresented they were providing related services in accordance with IDEA and Medicaid regulations. These claims were legally false, since the provider knew it was in violation of federal regulations at the time of submission. In other words, the Defendants lied when they accepted federal funds while simultaneously—and knowingly—breaking federal regulations.

IMPLIED CERTIFICATION FRAUD:  In some instances, the Defendant-School Districts' representative may not have actually signed a form certifying compliance, but still such actions constituted fraud. By submitting the claim, it is implied the provider affirmed that it was in compliance with the regulations, since violating those regulations would have made it ineligible to receive the funding. Put another way, the fact the provider submitted any claim when it knew or should have known it was ineligible to receive funds because of a violation, is what makes the claim legally "false."

WORTHLESS SERVICES FRAUD:  Under the Worthless Services Fraud understanding of false claims, the Defendant School Districts are liable since the limited services they may have provided was so subpar as to be completely worthless.[8] By claiming reimbursement for providing valueless care, the provider effectively has forced the government to pay for nothing—making it so the provider submits a legally false claim when it asks the government to reimburse it for services that have no value. These deceptive practices are a prima facie case of fraudulent behavior. If a provider's services are so bad that they in effect have no value, the provider might

---

[8] See, e.g., United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1053 (9th Cir. 2001) ("In an appropriate case, knowingly billing for worthless services or recklessly doing so with deliberate ignorance may be actionable under § 3729, regardless of any false certification conduct."); Mikes v. Straus, 274 F.3d 687, 703 (2d Cir. 2001) ("We agree that a worthless services claim is a distinct claim under the Act. It is effectively derivative of an allegation that a claim is factually false because it seeks reimbursement for a service not provided.").

as well be selling snake oil.  The Defendants knew the services they were claiming to provide were sub-par, if not worthless.

Defendant-State Education Departments have a fiduciary and oversight responsibility of Defendant-School Districts, but were complacent in these activities.  Defendant-State Education Departments were either fully aware of the activities of the Defendant-School Districts within their respective states or should have been aware.  "However, it is generally accepted that "ends of justice" jurisdiction is authorized where the RICO claim could not otherwise be tried in a single action because no district court could exercise personal jurisdiction over all of the defendants." *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297 (S.D.N.Y. 2010). *See* Civil RICO Statement filed herein.

It is posited that if Defendants disagree with this assessment, then this Court give leave for said Defendants to certify that they have not engaged in such conduct in violation of RICO.

Significantly, courts have held that RICO's "nationwide service of process" provisions also confer personal jurisdiction over a defendant in any judicial district, so long as the defendant has minimum contacts with the United States. *See, e.g., City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 541-43 (S.D.N.Y. 2005); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1182 (C.D. Cal. 1998) ("Where a defendant is properly served in the United States under RICO's nationwide service provision, that defendant's national contacts, rather than its minimum contacts with the forum state, determine whether the district court has personal jurisdiction over the defendant").

For example, in *Lisak v. Mercantile Bancorp, Inc*., 834 F.2d 668 (7th Cir. 1987), the Seventh Circuit reversed the district court's dismissal of a RICO claim for lack of personal jurisdiction, concluding that minimum contacts with the forum state are unnecessary in federal

question cases—such as those arising under RICO—because the court is exercising the judicial power of the United States, rather than that of an individual state.[9]

Upon information and belief, all States and Territories of the United States are the recipient of funding under the IDEA, 20 U.S.C. §1400-1487, and as such, have the responsibility to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate education." 20 U.S.C. § 1415(a).

Alternatively, it is respectfully requested that this Court stay its determination of jurisdiction until after a determination is made respecting class certification.

## **CONCLUSION**

In light of the foregoing, plaintiffs respectfully request that this Court issue an order maintaining the instant action against all Defendant School Districts.

Dated: New York, New York
September 11, 2020

>                              Respectfully submitted,
>                              /S: Peter G. Albert /
>                              Peter G. Albert, Esq.
>                              Brain Injury Rights Group, Ltd.
>                              300 East 95th Street - Suite 130
>                              New York, New York 10128
>                              (646) 850-5035

---

[9] Id. at 671-72. *See also Dornberger v. Metropolitan Life Ins. Co.,* 961 F. Supp. 506, 549 (S.D.N.Y. 1997) (concluding that court had jurisdiction over defendants outside New York who were connected to fraudulent scheme); *Kondrath v. Arum*, 881 F. Supp. 925, 929 (D. Del. 1995) (holding nationwide service of process obviates need to show minimum contacts with forum state*); Michaels v. Wildenstein & Co.,* No. 93-CV-8179, 1995 WL 326497, at *3 (S.D.N.Y. May 31, 1995) (holding that complaint need not allege specific contacts by Los Angeles defendant with New York forum where complaint alleged a conspiracy with a New York entity). *But see*, *PT United Can Co. Ltd. v. Crown Cork & Seal Co*., No. 96-CV-3669, 1997 WL 31194 (S.D.N.Y. Jan. 28, 1997) (interpreting "ends of justice requirement as allowing court to exercise personal jurisdiction over defendants only if all of alleged members of RICO conspiracy cannot otherwise be sued in one district), *aff'd*, 138 F.3d 65 (2d Cir. 1998).