UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

J.T., et al.,

        Plaintiffs,

   -against-                                    20 Civ. 05878 (CM)

BILL DIBLASIO, et al.,

        Defendants.

----------------------------------------------------------x

### ORDER DENYING LEAVE TO AMEND THE COMPLAINT WITHOUT PREJUDICE AND ADDRESSING THE ORDER TO SHOW CAUSE ISSUED BY THE COURT ON SEPTEMBER 14, 2020

McMahon, C.J.:

      The court has received Mr. Albert's response to the Order to Show Cause, which was issued on September 14 following the receipt of complaints from counsel for some of the many school districts (every one in the United States) that Mr. Albert has purported to sue in a class action. The complaints asserted that Mr. Albert was requesting impartial hearings on behalf of families who had never retained him to do any such thing.

      According to a letter from Mr. Albert dated September 16, 2020 (Docket #133) – which is denominated a "preliminary response" to the Order to Show Cause – the Brain Injury Rights Group (Mr. Albert's law firm, hereinafter referred to as "BIRG") commenced the instant action on a "pro bono" basis and without charging fees to any of the putative plaintiffs. As a result, he argued that no retainer agreement was required pursuant to 22 NYCRR § 1215.1. However, Mr. Albert required each of his "clients" to "review and execute a retainer agreement for legal services to be provided in connection with our groups' representation of the plaintiffs' claim." (*Id.*) That agreement contains a scope of services clause.

      Mr. Albert represented that he was in receipt of executed agreements from all of the plaintiffs whose school districts raised questions about whether BIRG had been retained to represent them in connection with impartial due process hearings, at least some of which were commenced after this lawsuit was filed, in what defense counsel believed was a belated effort to cure the plaintiffs' failure to exhaust administrative remedies, as required prior to the commencement of any lawsuit under the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400, et seq. ("IDEA"). Mr. Albert attached three such agreements to his letter (filed *ex parte*

1

at Docket #135). He subsequently filed a declaration with the court (Docket #141), in which he revealed that approximately 300 parents had executed agreements with his firm, and BIRG had filed 199 impartial hearing proceedings between June 1, 2020 and September 14, 2020 on behalf of putative class members who had executed such agreements. (*See id.* ¶¶ 4-6.)

In response to the September 14 Order to Show Cause, Mr. Albert filed – under seal – a list of the 199 impartial due process hearings commenced on behalf of putative class members. (Docket #142.) He filed all pertinent retainer agreements with the court (filed *ex parte* at Docket #143, 144) and represented that all of the agreements were "virtually identical." (Docket #133 at 2.) Mr. Albert also filed a motion for permission to file these documents under seal, presumably to protect the identity of the minor children involved. (Docket #134.)

*Motion to File Under Seal (Docket # 134)*

The motion to file under seal is DENIED. The retainer agreements that were filed with the court contain the names of the children receiving services under IDEA, which must be redacted. So must the names of their parents (which should be indicated by initials, as they normally are in IDEA case filings) and the parents' email addresses. But the terms of the retainer agreement contain nothing that could possibly be deemed "confidential information," and there is no reason for these documents to be filed under seal if they are properly redacted.

Similarly the list of the due process hearings that BIRG has initiated, purportedly pursuant to those retainer agreements, can be redacted to remove the names of the children and the full names of the parents, and can otherwise be filed without sealing. Unredacted originals should of course be filed under seal, but that does not excuse the failure to file publicly so much of these documents as does not reveal the identity of a child with a learning disability.

*The Order to Show Cause Dated September 14, 2020 (Docket # 128)*

The court has reviewed the retainer agreements and finds the argument that they authorize the commencement of impartial due process hearings on behalf of individual children deeply troubling.

For one thing, the text of the agreement would not be understood by reasonable parents as authorizing the commencement of impartial due process hearings on behalf of their children. The document contains a paragraph entitled "LEGAL SERVICES TO BE PROVIDED," which defines the scope of the representation being authorized as follows:

> Client hereby retains and employs the Attorneys to represent Client in *a matter* relating to the federal and state civil rights of Client, including but not limited to the special education rights of [NAME OF CHILD], *before local, state and federal agencies and courts.* In addition, Attorneys will represent Client for any potential Compensatory Damages and Punitive Damages as a result of Client's harm or injuries, such as loss of income, reimbursement of expenditures or compensation for services provided. Client understands and accepts that *Attorneys are seeking national class action status for the claims associated with their representation.*

The critical language is highlighted. The parents retained BIRG to represent them in "a matter" (one matter, not more than one) relating to their children's special education rights, in which the "Attorneys are seeking national class action status for the claims associated with their representation." The words "impartial due process hearing" or anything substantially similar are not mentioned, and understandably so. "National class action status" is not possible in the context of an impartial due process hearing under IDEA – a proceeding that, by definition (indeed, by virtue of the very title of the statute, the *Individuals* with Disabilities in Education Act) raises issues that are peculiar to each child's educational needs, and so are inappropriate for class action status. That being so, the phrase "claims associated with their representation" (i.e., the claims the parents are retaining BIRG to prosecute) would not naturally or logically be read to encompass an impartial due process hearing on behalf of the individual child. The fact that BIRG was being retained to represent the parents in "a" (one) matter confirms this interpretation; the matter in which BIRG is seeking national class action status is "a" matter, but an impartial hearing is "another" matter or a "second" matter, and the agreement does not refer to retention for any "second" or "additional" or even "collateral" matter.

Mr. Albert apparently believes it is self-evident that the scope of retention encompasses an impartial hearing, because he simply proffers the contracts as evidence of his retention for that purpose. I assume that his position focuses on the highlighted language stating that the "matter" for which he was being retained could be brought "before local, state and federal agencies and courts." An impartial due process hearing is brought in the first instance before a state agency, and then, if not amicably resolved, moves to the courts. BIRG's "national class action," by contrast, is not something that could be brought before a state or federal agency; it would have to be brought in a court. I imagine that Mr. Albert imagines that the oblique reference to agencies and courts establishes that the parents who signed these letters were also retaining him to commence impartial hearings on behalf of their children.

Frankly, this "lawyerly" argument is too clever by half. Few if any parents would understand that a reference to possible venues where "a matter" involving "the claims associated with their [national class action] representation" could be brought was equivalent to an authorization to have BIRG commence due process proceedings – proceedings addressed to a specific child's IEP, which by their very nature cannot be brought on behalf of any nationwide class -- before a state-appointed Impartial Hearing Officer. Many of the parents who have signed retainer letters in this case might be perfectly content with their child's current IEP, or if they are not, they might prefer that any challenges to an IEP be brought by a local lawyer which whom they are already familiar. But those same parents might also wish to be part of a class action that they are told will address the issue of school district policies for learning disabled children during the current pandemic. I doubt that many – if any – of those parents would equate consenting to the latter with authorizing a challenge to the former.

Clients who retain lawyers for a fee have a right to be told, in clear and understandable language, what they are retaining a lawyer to do; New York public policy reflects the "importan[ce] that a fee contract be fair, reasonable, and fully known and understood by the client." *Seth Rubenstein, P.C. v. Ganea*, 41 A.D.3d 54, 60 (2d Dep't 2007). While BIRG is not charging these parents a fee (although I am sure it will someday assert the right to any fee award that might be associated with this case, or with any due process hearing), I can see no reason why clients who

3

retains an attorney "pro bono" should not also have the right to "fully know[] and underst[and]" what they have authorized that lawyer to do on their behalf. Unfortunately, we already know that some of the signatory parents in this case did not "fully know and understand" what BIRG meant by its retainer agreement. That gives rise to the very real possibility that many, most, or even all of the rest did not, either.

Learning that some 200 requests for impartial hearings have already been filed on the basis of the obtuse and uninformative language in the BIRG form retainer agreement is very troubling to the court. Because specific challenges to an IEP may be waived if they are not properly filed, *see C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77–78 (2d Cir. 2014) (citing 20 U.S.C. § 1415); *FB v. New York City Dep't of Educ.*, 132 F. Supp. 3d 522, 547 (S.D.N.Y. 2015), there is no room for subtlety in a retainer agreement that purports to address retention for that particular purpose. No parent should unwittingly waive his or her child's right to challenge a particular year's IEP on any appropriate ground by having a lawyer who may not be fully familiar with that child's and family's situation file such a request. Yet nothing in the retainer letters with which the court has been provided, and nothing in the declaration filed by Mr. Albert, suggests that, before filing literally hundreds of requests for impartial hearing, BIRG (1) obtained and read all of the underlying IEPs, (2) spoke at appropriate length with the parents about their children's educational disabilities and the various bases on which the IEP might be challenged (not limited to the subject matter of the instant lawsuit), (3) obtained information from the parents about the process by which the IEP was formulated so that appropriate procedural challenges could be mounted, and then (4) obtained specific authorization to file a challenge to that child's current IEP. In the opinion of this court, a lawyer who did not follow those steps prior to noticing a due process hearing on behalf of a child would be committing malpractice. If BIRG filed a due process challenge to a child's IEP predicated solely on the theory alleged in the class action complaint – and justified doing so by pointing to the vague language quoted above that makes no reference to an impartial hearing – an *individual* child's *individual* right to challenge his or her *Individualized* Education Plan on other grounds could be unwittingly compromised by his or her parents. This would be intolerable.

Whatever BIRG and Mr. Albert may have understood or intended about the scope of their retention, it rests with them to prove that the parents of children with educational disabilities understood and intended exactly the same thing. There is an easy way to make sure that everyone is on the same page: draft a retention letter that specifically states that the scope of representation includes requesting an impartial due process hearing and representing the parents thereat. The retention letter used by BIRG does not come close to meeting that standard.

Although NYCRR 1215.1 was not specifically promulgated to alleviate professional abuses, "[N]o rule promulgated by the Appellate Division should intentionally be ignored by an attorney. Such unprofessional conduct invites both disciplinary and pecuniary penalties." *In re Estate of Feroleto*, 791 N.Y.S.2d 809, 812 (Bronx Cty. Sur. Ct. 2004). I appreciate that Mr. Albert has long been a member of the Bar of this court, and that he has represented many clients zealously in this district. It is for that reason that I take this opportunity to warn him that, in this instance, he may have (perhaps unintentionally) overstepped a boundary that – given his longstanding dedication to the rights of brain-injured children -- he would not wish to breach. I urge him to reconsider his position and to draft an appropriately comprehensible scope of representation

4

section for his retainer agreements before requesting any more impartial hearings. And before he makes any arguments predicated on the impartial hearings already noticed, I direct him to confirm with the parents on whose behalf he has already filed requests that he truly is authorized to do so, and to provide the court with an addendum to the retainer agreement, signed by the parents, that specifically retains BIRG for that purpose.

*The Motion for Leave to Amend the Complaint (Docket #133)*

In his September 16 letter, Mr. Albert seeks leave to amend the complaint in order to add some named plaintiffs and drop others, as well as to amplify his RICO allegations in light of his RICO case statement. (Docket #133 at 2.)

The motion is denied without prejudice.

Fed. R. Civ. P. 1 requires this court to make sure that this action is disposed of in the most just, speedy, and inexpensive manner possible. Allowing an amendment of the complaint at this juncture would accomplish none of the above.

The City of New York has filed its motion to dismiss the complaint on the merits and that motion is addressed to the complaint already on file. I intend to rule on that motion before we start amending pleadings, because the City has already gone to the trouble of responding to the original complaint and its response raises serious substantive issues that would not be cured by the proposed amendments. Indeed, once that motion is decided, it could render further amendment futile, in whole or in part.

Additionally, the court has yet to rule on BIRG's responses to the court's Order to Show Cause dated September 2, 2020. (Docket #84, 122, 123, 124) That ruling may well eliminate much of what is contained in the current pleading and could require substantial further amendment of the pleading as a result. In order to eliminate the very real possibility of serial amendments, this court intends to see what can be pruned permanently from this case as originally filed.

The amendments proposed by BIRG will not address any of these issues. The addition or subtraction of named plaintiffs need not take place at this moment. And there is no reason to amend the complaint to conform its bare bones RICO allegations to the RICO case statement that was recently filed. Under this court's individual rules, the civil RICO statement is considered to be part of and integral to the complaint; it is something that I consider on a motion to dismiss.

I will address the matters set forth at Docket #121, 122, 123 and 124 in the same opinion in which I deal with the City's motion to dismiss the complaint. Mr. Albert should get his response to that motion in promptly.

Dated: September 22, 2020

_____
Chief Judge

BY ECF TO ALL COUNSEL