UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x

**J.T.,** Individually and On Behalf of D.T.;
**K.M.,** Individually and On Behalf of M.M. and S.M.;
**J.J.,** Individually and On Behalf of Z.J.;
**C.N.,** Individually and On Behalf of V.N.; and,
All Others Similarly Situated,

                                 Plaintiffs,                    **20-CV-5878 (CM)**

        -   against -

**BILL de BLASIO**, in his official capacity as
the Mayor of New York City; **RICHARD CARRANZA**,
in his official capacity as the Chancellor of New York City
Department of Education; the **NEW YORK CITY
DEPARTMENT OF EDUCATION**; the **SCHOOL
DISTRICTS IN THE UNITED STATES**; and,
**STATE DEPARTMENTS OF EDUCATION IN THE
UNITED STATES,**

                                   Defendants.

---------------------------------------------------------------------x


**<u>REPLY MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND IN
OPPOSITION TO DEFENDANTS BILL de BLASIO, RICHARD CARRANZA, AND
NEW YORK CITY DEPARTMENT OF EDUCATION MOTION TO DISMISS</u>**

Peter G. Albert, Esq.
Brain Injury Rights Group, Ltd.
Attorneys for Plaintiffs
300 East 95th Street – Suite 130
New York, New York 10128
(646) 850-5035

Table of Contents

TABLE OF AUTHORITIES……………………………………………………………...3

PRELIMINARY STATEMENT……………………………………………………….... 5

STATEMENT OF FACTS…………………………………………………………………..5

POINT I:

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
SHOULD BE GRANTED ………………………………………………………… 6

    A.  IDEA's Stay-Put/Pendency Provision …………………………………………… 6
    B.  The Requirements for Traditional Injunctive Relief
        Do Not Apply in IDEA Cases Involving Pendency ………………………………… 8

POINT II:

THE COURT HAS SUBJECT MATTER JURISDICTION ………………………………… 12

POINT III:

PLAINTIFF-STUDENTS ARE ENTITLED TO PENDENCY……………………………… 12

CONCLUSION…………………………………………………………………………15

**Table of Authorities**

**Cases**

Avaras v. Clarkstown Central School District, et al.,
18-cv-6964, Docket Entry No. 30 (S.D.N.Y. August 27, 2018)...........................................8, 13

Board of Educ. v. J.P., 2018 U.S. Dist. LEXIS 105102 at *7
(E.D.N.Y. June 21, 2018) ………………………………………………………… 8, 13

Concerned Parents & Citizens for the Continuing Ed. at Malcolm X (PS 79) v.
New York City Bd. of Ed., 629 F.2d 751 (2d Cir. 1980) ………………………………….. 9

Cronin v. Bd. of Educ. of East Ramapo Cent. Sch. Dist.,
689 F. Supp. 197, 202 (S.D.N.Y. 1988)....................................................................9,

Dervishi v. Stamford Bd. of Educ.,
2016 WL 3548246 at *2 (2d Cir. 2016)..................................................................13

Doe v. East Lyme Board of Ed.,
790 F.3d 440 (2d Cir. 2015)......................................................... 8, 10, 11, 13

Engwiller v. Pine Plains C.S.D., 110 F. Supp.2d 236 (S.D.N.Y. 2000) . . . …………….. 11

Honig v. Doe, 484 U.S. 305, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988) ..…………… …..8, 9, 10

LV v. NYC Dep't of Educ., 700 F.Supp.2d 510 (S.D.N.Y. 2010)……………..……,,….. 11

Mackey v. Board of Educ., 386 F.3d 158 (2d Cir.2004)…………………………………12

M.G. v. New York City Dept of Educ.,
982 F. Supp. 2d 240 (S.D.N.Y. 2013)......................................................... 9, 11

Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,
297 F.3d 195 (2d Cir. 2002)......................................................... 8, 10, 11, 13

Murphy v. Arlington C.S.D., 86 F. Supp.2d 354 (S.D.N.Y. 2000)………………………… 11

N.D. v. Hawaii Dept. of Educ,
600 F.3d 1104 (9th Cir. 2010)........................................................................10

Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,
288 F.3d 478 (2d Cir. 2002)...............................................................,,,,,,,,......10

T.Y. v. N.Y.C. Dept. of Educ.,
584 F.3d 412 (2d. Cir. 2009)...............................................................,,,,,,,.............9

T.M. v. Cornwall Central School District,
752 F.3d 145 (2d Cir. 2014))............................................................................................... 8

Zvi D. v. Ambach,
694 F.2d 904 (2d Cir. 1982))............................................................................................... 8

**Statutes**

18 U.S.C. §1964(a)……………………………………………………………14

18 U.S.C. §1341……………………………………………………………………14

18 U.S.C. §1343……………………………………………………………………14

18 U.S.C. §2314 …………………………………………………………………14

18 U.S.C. §2315 ………………………………………………………………… 14

18 U.S.C. §1344……………………………………………………………………14

20 U.S.C. § 1400, et seq. ……………………………………………..…passim

20 U.S.C. § 1415……………………………………………………………passim

29 U.S.C. §794, et seq. (Section 504, Rehabilitation Act of 1973)…………………passim

N.Y. Educ. L. § 4404……………………………………………………...8

34 C.F.R. § 300.106…………………………………………………………..7

34 C.F.R. § 300.518…………………………………………………………..8

8 N.Y.C.R.R. § 200.11……………………………………………………11

**Other Authorities**

Letter to Fisher, 21 IDELR 992……………………..………………….…….…...15

Letter to Rieser, EHLR 211:403 (July 17, 1986) ………………………………….. 13

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted in support of Plaintiffs' Application for an Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and in opposition to the Defendants Bill de Blasio, Richard Carranza, and the New York City Department of Education's ("DOE") motion to dismiss.

Plaintiffs' application seeks an order: 1) requiring Defendants to either reopen their schools and implement the Students' IEPs ("Individualized Education Program") *or* have Defendants fund a Pendency Voucher to allow the Plaintiff-Parents an opportunity to self-cure; 2) requiring Defendants to conduct an independent evaluation of the Plaintiff-Students to determine compensatory services for the Students, and whether any changes are warranted to the Plaintiff-Students' IEPs; 3) requiring Defendants to reimburse Plaintiff-Parents for out-of-pocket expenses or loss of income and/or employment; and, 4) ordering punitive damages based upon the Defendants' willful and deliberate neglect and abandonment of the educational and medical needs of the Plaintiff-Students as evidenced by Defendants' unjustified termination or modification of the implementation of the Students' IEPs.

## STATEMENT OF FACTS

Counsel respectfully refers the Court to the Plaintiffs' Declaration in Support and Plaintiff's Memorandum of Law in Support of the Order to Show Cause for Injunctive Relief (ECF Dkt. Entry #90) for a full recitation of the facts herein.

As a result of the novel coronavirus ("Covid 19"), on or about March 16, 2020, Defendant DOE closed its school buildings and required all students and staff to remain home, and changed in-person instruction to "remote learning," if any. (*See* Par. 7, Complaint ECF Dkt. Entry # 1).

School districts across the country requested the U.S. Secretary of Education to grant waivers from the requirements of the Individuals with Disabilities Education Act, 20 U.S.C.

§1400, et seq. ("IDEA"), from providing FAPE ("free appropriate public education") during the coronavirus crisis. While the United States Department of Education ("USDOE") and state education departments provided great flexibility in the provision of educational services during the coronavirus crisis, there was no change in federal or state law.

Beginning in July 2020, most state Governors rescinded their executive orders to allow schools to reopen in July 2020 for extended school year ("ESY") special education students. Nevertheless, Defendant DOE unilaterally modified its procedures, in violation of the due-process requirements of the IDEA, in an effort to modify services set forth in students' IEPs. DOE failed to provide Plaintiff-Students with the special education and related services set forth in their IEPs.

## POINT I
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF SHOULD BE GRANTED.

### A.  IDEA's STAY-PUT / PENDENCY PROVISION

The IDEA contains a "stay put" or "pendency" provision that provides: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and parent otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518(a) and in New York State, N.Y. Educ. L. § 4404(a). "The purpose of this provision is 'to maintain the educational status quo while the parties' dispute is being resolved.'" *Avaras v. Clarkstown Central School District, et al.*, 18-CV-6964 (NSR), Docket Entry No. 30 (S.D.N.Y. August 27, 2018); *Doe v. East Lyme Board of Ed.*, 790 F.3d 440, 452 (2d Cir. 2015); *T.M. v. Cornwall C.S.D.*, 752 F.3d 145, 152 (2d Cir. 2014)).

The IDEA's "stay put" provision is essentially an automatic preliminary injunction requiring the school district to maintain the student's educational placement. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,* 297 F.3d 195 (2d Cir. 2002). In this regard, the IDEA:

> substitutes an absolute rule in favor of the status quo for the court's
> discretionary consideration of the factors of irreparable harm, and either
> a likelihood of success on the merits or a fair ground for litigation
> and a balance of hardships.

*See, Board of Educ. v. J.P.,* 2018 U.S. Dist. LEXIS 105102at *7 (E.D.N.Y. June 21, 2018) (citing *Zvi D. v. Ambach,* 694 F.2d 904, 906 (2d Cir. 1982)); *see also* 34 C.F.R. § 300.518(a) and N.Y. Educ. L. § 4404(a).

The DOE unilaterally closed its schools and required students and staff to remain home, thereby altering the status quo of the educational programs of the Plaintiff-Students.  First, the DOE unilaterally, substantially and materially altered the location of where the Plaintiff-Students were to receive services: from a school classroom to the most restrictive environment along the continuum of service: at the Plaintiff-Students' home.  A unilateral change from a classroom to isolation at home, also violates the IDEA's express requirement for educating students in the "least restrictive environment" and with their typically developing peers. *Honig v. Doe*, 484 U.S. at 313. A change from a school-based program to home instruction is a material and substantive change to the educational program.  *Concerned Parents v. NYC Bd. of Educ.*, 629 F.2d 751 (2d Cir. 1980).

Second, the DOE unilaterally, substantially, and materially altered the delivery of these services by precluding the Plaintiff-Students from receiving any in-person services by special education teachers or related service providers, including any supplemental support as documented in the Plaintiff-Students' IEPs. This unilateral, substantial, and material change in the delivery of academic and related services constitutes an improper change of educational program. *T.Y. v. N.Y.C. Dept. of Educ.*, 584 F.3d 412, 419 (2d. Cir. 2009).

Third, no Plaintiff-Students' IEP provides for the remote provision of special education or related services.  Rather, the Plaintiff-Students' IEPs require these services to be provided as a direct service to the Plaintiff-Students.

## B.  THE REQUIREMENTS FOR TRADITIONAL INJUNCTIVE RELIEF DO NOT APPLY IN IDEA CASES INVOLVING PENDENCY

DOE's argument that Plaintiffs must establish the elements for injunctive relief herein is misplaced. As this Court found in *Cronin v. East Ramapo Cent. Sch. Dist.,* 689 F. Supp. 197, 202 (S.D.N.Y. 1988), the traditional preliminary injunction test does not apply to cases involving pendency. The IDEA's "stay-put" provision functions as an automatic preliminary injunction, without regard to factors such as irreparable harm or likelihood of success on the merits.  *See M.G. v. New York City Dep't of Educ.,* 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013) ("[p]endency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships."). Given the fact that pendency was intended to be an automatic injunction, DOE has harmed Plaintiff-Students by delaying the educational programming as per the Plaintiff-Students' IEP.

Although IDEA contains an exhaustion requirement, s*ee Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 483 (2d Cir. 2002), the IDEA carves out three exceptions to this requirement when: (l) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies. *Murphy,* 297 F.3d at 199.

Notwithstanding this "exhaustion" requirement, Plaintiffs herein are not required to exhaust administrative remedies when alleging a violation of 20 U.S.C. §1415(j). An action alleging the violation of the stay-put provision falls within one or more of the exceptions to the

exhaustion prerequisite. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002); *Doe,* 790 F.3d at 445; s*ee also N.D. v. Hawaii Dept. of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010) (concluded that "exhausting the administrative process would be inadequate because the stay-put provision (and therefore the preliminary injunction) is designed precisely to prevent harm while the proceeding is ongoing.").[1]

In *Murphy, supra,* the Second Circuit unequivocally held that "an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to this jurisdictional prerequisite." *Id.* The underlying rationale is that "the administrative process is inadequate to remedy the violations of [the "stay-put" provision] because, given the time sensitive nature of the IDEA's stay-put provision, an immediate appeal is necessary to give realistic protection to the claimed right." *Id.* (citations omitted); *see also, Doe, supra*, 90 F.3d at 445; *M.G., supra,* 982 F. Supp.2d at 247. Accordingly, exhaustion of administrative remedies herein is not required.

The IDEA and New York Education Law both contain timeline requirements ensuring prompt adjudication of Due Process Complaints brought under the IDEA. Pursuant to 34 C.F.R. §300.515(a), a decision in a due process hearing must be reached no later than 45 days after the expiration of the 30-day resolution period. New York regulations are similar. 8 N.Y.C.R.R. §201.11.  The prompt resolution of due process complaints is of prime importance. *See Engwiller v. Pine Plains C.S.D.,* 110 F. Supp.2d 236 (S.D.N.Y. 2000); *Murphy v. Arlington C.S.D.,* 86 F. Supp.2d 354 (S.D.N.Y. 2000).

---

[1] See *Honig v. Doe*, 484 U.S. at 326-27 (noting that because "parents may bypass the administrative process where exhaustion would be futile or inadequate . . . we have no reason to believe that Congress meant to require schools alone to exhaust in all cases, no matter how exigent the circumstances").

To the detriment of the NYC Plaintiff-Parents, DOE's special education system is broken. DOE was previously sued in a class-action lawsuit over the issue of implementing orders, and as part of the terms of the settlement, established a protocol to implement IHO orders within thirty (30) days. *See LV v. NYC Dep't of Educ.*, 700 F.Supp.2d 510, 512 (S.D.N.Y. 2010).  In spite of the *LV* case, the DOE has a notorious track record of delaying payments for special education students.  The Plaintiffs in *LV*[2] had to return to federal court[3] where a Special Master became involved due to DOE's failures. A February 2019 report found the management of special education complaints by the DOE "vulnerable to imminent failure and, ultimately, collapse."[4] In May 2019, the state "Compliance Assurance Plan" found the city in violation of federal laws governing students with disabilities for the past 13 years.[5] "The price for this dysfunctional system has been paid by New York's most vulnerable residents: preschool and school-age children with disabilities that affect their ability to learn."[6]

Finally, if there any doubt at whether DOE has unclean hands, a March 31, 2020, directive from Michael van Biema, Executive Director, Office of Related Services, removes it. That directive formally instructed the providers of the related services to not visit the students' homes, ensuring that the students would be deprived of these related services, which are considered essential services by executive order of the Governor.[7] DOE defied the Governor's executive order and undermined the relationships between disabled students and the providers of the related services those students need.

---

[2] https://advocatesforchildren.org/node/1388
[3] https://www.advocatesforchildren.org/sites/default/files/on_page/lv_special_master_motion.pdf?pt=1
[4] https://www.documentcloud.org/documents/6025928-External-Review-of-the-New-York-City-Impartial.html
[5] https://www.documentcloud.org/documents/6025929-NYCDOE-Compliance-Assurance-Plan-May-2019.html
[6]   https://www.politico.com/states/new-york/city-hall/story/2020/03/01/nyc-special-ed-crisis-draws-attention-of-state-education-officials-1264626
[7]   Executive Order 202.4 by New York Governor Andrew Cuomo on March 16, 2020: https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO%20202.4.pdf

Plaintiffs have filed administrative due process complaints with DOE, and to date, all but a handful have been assigned to an Impartial hearing officer ("IHO") for adjudication. See Declaration, Exhibit "B").  This clearly shows the futility of exhausting administrative remedies.

Concerning the issue of equitable considerations, given the framework of the  IDEA's stay-put provision, codified at 20 U.S.C. §1415(j), and the inherent immediacy of pendency, DOE cannot be relieved of its obligations. DOE has conceded that it has unilaterally implemented new procedures seeking to change the educational program of disabled students.  There was no notice to parents of any such change, in violation of the due-process requirements of the IDEA. Accordingly, the equities favor Plaintiffs.

And, with respect to public interest issues, and contrary to DOE's assertions, Plaintiffs are not challenging the DOE's decision, underlying rationale, or policy to close the schools in light of covid-19.  Rather, Plaintiffs herein are challenging the unilateral implementation of those policies as it specifically modified Students' IEPs and resulted in procedural violations of the IDEA and constituted a substantive change in the educational placement of the adversely affected students. Such actions are violative of the IDEA. (*see* Complaint).

The case law cited by DOE is inapposite. On the other hand, in *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195 (2d Cir. 2002), while seeking an administrative ruling on the appropriate placement for their child, the parents went directly to the district court on the issue of pendency. *Id.* at 198.  The Second Circuit found that the district court had jurisdiction, despite the parents' failure to exhaust administrative remedies. *Id.* at 199-220.  Then-Judge Sotomayor held that a plaintiff need not exhaust a "stay put" related claim because, "as a practical matter, access to immediate interim relief is essential for the vindication of this particular IDEA right.' *Id.* at 200; *see also Doe, supra*, 790 F. 3d at 455; *Avaras v. Clarkstown Cent. Sch. Dist.*, 2018 WL 4103494,

at *3 (S.D.N.Y Aug. 28, 2018); *Bd. of Educ. of Uniondale Union Free Sch. Dist. v. J.P.*, 2018 WL 3946507, at *4-5 (E.D.N.Y. June 21, 2018), *report and recommendation adopted*, 2018 WL 3941945 (E.D.N.Y Aug 15, 2018); *see also Murphy*, 297 F.3d at 199; *Doe*, 790 F.3d at 455.

## POINT II
## THE COURT HAS SUBJECT MATTER JURISDICTION

Contrary to DOE's argument, inasmuch as Plaintiffs are not required to exhaust their administrative remedies herein because their claims involve pendency, this Court clearly has subject matter jurisdiction. The instant case arises under federal statutes, including IDEA, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, et seq. ("Section 504"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").

Plaintiffs' complaint incorporates a claim of violations of the civil section of the Racketeer Influenced and Corrupt Organization Act ("RICO"). *See* 18 U.S.C. §1964(a). Specifically, through their actions which caused, inter alia, False Certification Fraud, Implied Certification Fraud and Worthless Service Fraud, Defendant-School Districts violated the following statutes: 18 U.S.C. §1341.Frauds and swindles (mail fraud), 18 U.S.C. §1343.Fraud by wire, radio, or television (wire fraud), 18 U.S.C. §2314 (fraudulent transfer of money), 18 U.S.C. §2315 (fraudulent receipt of money) and 18 U.S.C. §1344.Bank fraud (financial institution fraud).

In this regard, it is curious to note DOE failed to deny any of the allegations in the RICO Case Statement, which is incorporated and made part of the Complaint: thus admitting to all allegations of wrongdoing and forfeiting any defense.

## POINT III
## PLAINTIFF-STUDENTS ARE ENTITLED TO PENDENCY

As stated above, 20 U.S.C. §1415(j) enables a student to remain in his or her "then current educational placement" during the pendency of the due process proceeding. The Second Circuit, in *Dervishi v. Stamford Bd. of Educ.,* 2016 WL 3548246 at \*2 (2d Cir. 2016), held that the "then current educational placement" may include: (1) the placement described in the student's most recently implemented or agreed to IEP; (2) the operative placement actually functioning at the time when the pendency provision of the IDEA was invoked; and (3) the placement at the time of the previously implemented IEP." *See also, Avaras,* S.D.N.Y., 18-CV-6964 (NSR), Docket Entry No. 30 (August 27, 2018); *Doe,* 790 F.3d at 452.

The term "educational placement" encompasses at least three components." *See Letter to Rieser*, EHLR 211:403 (July 17, 1986).  The first involves the type of placement – i.e., a classroom; the second is the "educational program contained in the IEP"; and, the "third and final component is the specific school or facility which the child attends."

Over the course of several decades, the Second Circuit has consistently defined "educational placement" as meaning the components of the student's "educational program." *T.M., supra*, 752 F.3d at 171 (quoting *Concerned Parents v. NYC Dep't of Educ.*, 629 F.2d 751, 753 (2d Cir. 1980)); *T.Y. v. N.Y.C. Dept. of Educ.*, 584 F.3d 412, 419 (2d. Cir. 2009) ("'Educational placement' refers to the general educational program - such as the classes, individualized attention and additional services a child will receive...").

In *Letter to Fisher*, 21 IDELR 992 [OSEP 1994], the U.S. Department of Education's Office of Special Education Programs ("OSEP") specifically addressed the question of what constitutes a "change in educational placement" and opined that whether a change in educational placement has occurred turns on "whether the proposed change would substantially or materially alter the child's educational program" *(Id*.).  OSEP identified the following factors: whether the

educational program set out in the child's IEP has been revised; whether the child will be able to be educated with nondisabled children to the same extent; whether the child will have the same opportunities to participate in nonacademic and extracurricular services; and whether the new placement option is the same option on the continuum of alternative placements.

DOE contends that some students may be eligible for in-person services if their classroom is large enough for "appropriate social distancing." However, IDEA requirements are based on a student's individual needs rather than the fortuity of the size of their physical classroom.

However, changing in-person services to remote services and altering the frequency and/or duration of such services - - absent parental consent - - constitutes an unlawful and inappropriate change in placement.  The changes unilaterally imposed by DOE fail the *Letter to Fischer* test.

This is not a case of hampering the school districts' ability to implement changes to a student's educational program. *See Concerned Parents, supra*, 629 F.2d at 756. Such an interpretation of the IDEA would basically eliminate a district's ability to implement even minor discretionary changes within the educational programs.  Moreover, "the Supreme Court has clarified that temporary changes in location do not violate the "stay-put" provision provided they do not result in a diminution of the educational services to which the student is entitled." *A.W. v. Fairfax County Sch. Bd.,* 372 F.3d at 681; *see also Honig, supra,* 484 U.S. 325-26 n.8.

## <u>CONCLUSION</u>

In light of the foregoing, plaintiffs respectfully request that this Court issue an order granting all of the relief sought herein and any other relief the Court finds just, proper and equitable.

Dated: September 25, 2020     Respectfully submitted,
   NY, NY        / S: Peter G. Albert /
                Peter G. Albert
                300 E. 95th Street, NY, NY 10128
                (646) 850-5035