Civil Action No. 20 CV 5878 (CM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J.T., Individually and on behalf of D.T.; *et al.*,

              Plaintiffs,

-against-

Bill de Blasio, in his official capacity as the Mayor of New York City; *et al.,*

              Defendants.

**REPLY MEMORANDUM OF LAW OF THE NYC DEFENDANTS IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

***JAMES E. JOHNSON***
*Corporation Counsel of the City of New York*
 *Attorney for the NYC Defendants*
 *100 Church Street*
 *New York, N.Y. 10007*

 *Of Counsel: Marilyn Richter, Senior Counsel,*
 *(mrichter@law.nyc.gov)*
 *Mark Toews, Senior Counsel*
 *(mtoews@law.nyc.gov)*
 *Janice Birnbaum, Senior Counsel*
 *(jbirnbau@law.nyc.gov)*
 *Tel: (212) 356-???????*
 *LM #: 2020-027097*

# PRELIMINARY STATEMENT

Mayor Bill de Blasio, Chancellor Richard Carranza, in their official capacities, and the New York City Department of Education ("DOE") (collectively, the "NYC Defendants") submit this Reply Memorandum of Law in further support of their Motion to Dismiss the Complaint.

## POINT I

**PLAINTIFFS IGNORE THE CONTROLLING LEGAL AUTHORITY WHICH PROVIDES BROAD DISCRETION TO ELECTED OFFICIALS TO PROTECT THE PUBLIC HEALTH. SYSTEMWIDE CHANGES IN SCHOOL OPERATIONS IN RESPONSE TO THE COVID-19 PANDEMIC DO NOT VIOLATE THE IDEA AND DO NOT GIVE RISE TO PENDENCY.**

(1)

Plaintiffs' papers in Further Support of their Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction and in Opposition to [the NYC Defendants'] Motion to Dismiss (hereafter "Pl. Opp. Papers"), completely ignore the extensive case law cited by the NYC Defendants, including Jacobson v. Massachusetts, 197 U. S. 11 (1905) and South Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613 (2020), which provide broad discretion to state and local officials to act for the common good and restrict activities that would normally be constitutionally protected in response to a pubic health emergency, including such fundamental rights as the freedom to attend religious services, *Id.* at 1613. and liberty from incarceration. Jacobson, 197 U.S. at 26-27..[1]

---

[1] Attached hereto a New York State Supreme Court decision, filed on September 25, 2020, dismissing a petition brought by DOE teachers who wanted to work remotely. Corwin v. City of New York, Index No. 157166/2020 (N.Y. Sup. Ct., N.Y. Cnty. Sept. 25, 2020). Although the decision relies on state law, the analysis is similar to that used by the federal courts, and the decision has a useful discussion of the development of the DOE's school reopening plan for Fall 2020.

The gravamen of the complaint is that the provisions of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA") are immutable and must be strictly complied with in all circumstances, including during a global pandemic that is the worst public health crisis in a century. If this stated a claim, then the IDEA would be the most fundamental law, elevated above the First Amendment and all other constitutional rights. Not only is this incorrect, public education is not even a federal fundamental right. *Plyler v. Doe*, 457 U.S. 202, 221 (1982) ("Public education is not a 'right' granted to individuals by the Constitution."); *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 35 (1973). The complaint further essentially asserts that the alleged failure to strictly comply with the provisions of the IDEA constitutes unlawful discrimination based solely on Plaintiff Students' disabilities in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. 12010, et seq. (Complaint ¶ 188) and denies Plaintiff Students access to appropriate educational services compared to those received by non-disabled students in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 494, et seq. (Complaint ¶ 178). No claims are stated under these statutes; the NYC Defendants' response to the pandemic provides that all New York City public school students have been treated alike; they all began full remote learning as of March 23, 2020 and they all had the option of blended learning or full remote learning beginning in Fall 2020.

Public health measures that affect all students do not violate the rights of any, including students with disabilities ("SWDs"). Plaintiffs also ignore Phillips v. City of New York. 775 F.3d 538, 542 (2d Cir. 2015). There, the Second Circuit upheld N.Y. Public Health Law § 2164, which bans all students from attending any school in New York State if they have failed to obtain the required vaccinations. Following Phillips, in V.D. v. New York, 403 F. Supp. 3d 76 (E.D.N.Y. 2019), the court held that N.Y. Public Health Law § 2164 was not preempted by the

IDEA and denied both a preliminary injunction and "stay-put" orders. The plaintiffs were parents of SWDs, who previously had a statutory religious exemption from the vaccination requirement, until the exemption was repealed. After discussing the considerable discretion accorded the states in areas affecting public health and safety, the court denied the stay-put orders, finding in part

> …that the stay-put provision, as written and applied, is designed to preserve the existing placement for an *individual* child—not to enjoin systemic action. *See* 20 U.S.C. § 1415(j)… Indeed, courts have acknowledged that the stay-put provision "was not intended to cover system-wide changes in public schools that affect disabled and non-disabled children alike.'' *N.D.*, 600 F.3d at 1107-08; *see also Tilton*, 705 F.2d at 804 ("Congress did not compel, as the price for federal participation in education for the handicapped, a wholesale transfer of authority over the allocation of educational resources from the duly elected or appointed state and local boards to the parents of individual handicapped children."). If an individual parent could enjoin any system-wide action that incidentally impacted her child's educational services, she would be granted "veto power over a state's decisions regarding the management of its schools." *N.D.*, 600 F.3d at 1117

*Id. at* 94.

The Ninth Circuit's decision in N.D. v. Hawaii, 600 F.3d 1104 (9th Cir. 2010), quoted in V.D., concerned staff furloughs due to a fiscal crisis, which reduced the school week to four days for seventeen weeks (a loss of 10% of instructional time). The requested preliminary injunction and stay put orders were denied.

(2)

The claim that, as a matter of law, the change from full-time in-person learning to remote or blended learning in response to the pandemic, violates the IDEA and constitutes a denial of a free appropriate public education ("FAPE"), is contradicted by the relevant guidance provided by federal and New York State agencies. The most recent guidance by the federal government was issued on September 28, 2020, by the U.S. Department of Education's Office of Special Education Programs ("OSEP") and the U.S. Department of Justice's Office of Civil Rights

3

("OCR") in the form of Questions and Answers documents. The OSEP guidance concerns the implementation of Part B of the IDEA (provisions of special education services to school-age students) "in the current COVID-19 environment." It is published at https://www2.ed.gov/policy/speced/guid/idea/memosdcltrs/qa-provision-of-services-idea-part-b-09-28-2020.pdf. . The introduction states, in part:

> State educational agencies (SEAs) and local educational agencies (LEAs) are facing new and unexpected challenges in providing meaningful instruction to children, including children with disabilities, for the 2020-2021 school year. OSEP recognizes that the COVID-19 pandemic has impacted various parts of the nation in different ways. OSEP also recognizes that circumstances continue to rapidly change, and ultimately, the health and safety of children, families, and the school community is most important.
>
> Decisions about the 2020-2021 school year, including how and when educational and other services are provided, are being made by State and local officials, with continued academic growth and the safety of the local school community being of paramount significance. As public agencies and officials grapple with challenging decisions, administrators, educators, and parents may need to consider multiple options for delivering instruction, including special education and related services to children with disabilities. **Those options could include remote/distance instruction, in-person attendance, or a combination of both remote/distance instruction and in-person attendance (hybrid model).** [footnote omitted; emphasis added]. Id. at 1-2

The Guidance further states:

> We understand circumstances are always subject to change and recognize that ultimately the health and safety of children, families, and the school community is most important. SEAs and their public agencies must make every effort to continue to provide children with disabilities with the special education and related services appropriate to their needs.
>
> As conditions continue to change throughout the country, some of the special education and related services included in a child's IEP may need to be provided in a different manner; however, all children with disabilities must continue to receive FAPE…Id. at 2-3.

OCR's published "Questions and Answers for K-12 Public School to a Current COVID-10 Environment." It is published at https://www2.ed.gov/about/offices/list/ocr/docs/qa-covid-20200928.pdf. Question and Answer 8 is particularly relevant.

> Question 8:
> If a school is experiencing operational challenges relating to COVID-19, including suspending in-person instruction and offering distance learning, must the school revise plans developed to meet the requirements of Section 504 to reflect the change to distance learning?
>
> Answer
> Placement decisions and educational settings in effect at the time that a school suspends in-person instruction in response to concerns over COVID-19 do not need to be changed or updated solely to reflect a *temporary* shift to distance learning. However, State and local decisions that require schools to limit or suspend in-person instruction do not relieve school districts of the obligation to provide a FAPE to students with a disability. And as explained in Question 5, failing to implement aids, services, or accommodations/modifications identified in an IEP or Section 504 plan could in some cases deny a student a FAPE, violating Section 504. School districts should therefore continue to make individualized determinations as to whether students' IEPs or Section 504 plans need to be revised to ensure students with disabilities are provided a FAPE, including by identifying how the special education or related aids and services called for by a student's IEP or Section 504 plan may be provided through a variety of instructional methods and settings. School staff and parents are encouraged to work together to find ways to meet the needs of students with disabilities, notwithstanding challenges due to COVID-19. Id. at 5-6.

*See also*, Operating schools during COVID-19: CDC's Considerations, Updated September 1, 2020 (identifies a range of options including full in-person learning, alternating schedules where students attend in-person on alternate days, hybrid schedules, a combination of some in-person and some virtual learning and full virtual learning) https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/schools.html; New York State Education Department, published July 2020, "Recovering, Rebuilding and Renewing: The Sprit of New York's Schools, Reopening Guidance" ("Everybody wants our students back in school. But it would be reckless to return until it is safe to do so. That is why this guidance document contemplates three possible reopening scenarios: in-person instruction,

remote instruction, and a combination of the two.") http://www.nysed.gov/common/nysed/files/programs/reopening-schools/nys-p12-school-reopening-guidance.pdf,; at p. 3.

## POINT II

**THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES**

Brach v. Newsom, 20-cv-06422-SVW-AFM (C.D.CA. August 21, 2020) (a copy of this unreported decision is attached hereto) is a very similar case that has an instructive discussion on exhaustion of administrative remedies. At least five of the fourteen plaintiffs are SWDs. They challenged California's limitation on in-person learning for fall 2020 (schools cannot provide in-person instruction unless certain COVID-19-related benchmarks are met in the county). Among the claims are that California's limits on in-person learning violates the IDEA, the ADA and Section 504 of the Rehabilitation Act of 1973.

In denying a temporary restraining order, the court indicated that while it had requested further briefing on the exhaustion issue because the parties had not fully briefed it, the court had determined that "Plaintiffs' failure to exhaust is unlikely to be excused." Id. at 11. The court further found that Plaintiffs were unlikely to be entitled to an exception to the exhaustion requirement even for policies or practices of general applicability that are contrary to law. The court noted that while the State's limitation on in-person learning is a policy of general applicability, it is not facially invalid and there are individualized factual questions that must be addressed "including detailed analysis of a child's particular impairments and ability to interact with technology" to determine whether these students "can receive a FAPE remotely." Id. at . 13.

In addition, the administrative process would permit full exploration of both the educational issues and decision makers, who have expertise and responsibility for administering special education in the relevant school sytem(s). Id. This analysis is certainly applicable here, where the complaint (and the motion papers for a preliminary injunction) provide no factual information whatsoever as to the individual Plaintiff Students' experiences with remote learning and for thirty-seven of the thirty-nine New York City Plaintiff Students' state only that they are New York City residents who have been classified as students with disabilities. Finally, the court in Brach found that the failure to exhaust will apply to the ADA and Rehabilitation Act claims as well, since the gravamen of those claims is that plaintiffs have been denied their right to receive a FAPE. Id. at 14; *See also,* 20 U.S.C. 1415(l); Fry v. Napoleon Community School, 137 S Ct. 743 (2017).

It should be stressed that parents have other non-litigation options available if they believe their child's IEP should be revised to address the student's current needs; there are ¶described in the Declaration of Christina Foti, dated September 18, 2020, ¶ 22.

## POINT III

**PLAINTIFFS' RICO STATEMENT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND SHOULD BE DISMISSED**

The complaint does not mention a claim pursuant to the Racketeer Influenced and Corrupt Organization Act. ("RICO") 18 U.S.C.§§_1961-1968. Plaintiffs' Rico Statement, which is now incorporated into the complaint, was filed pursuant to the Court's Civil Rico Case Standing Order (and about three weeks late), does not comply with the Standing Order requirements to provide very specific and detailed factual allegations and to reference the letter and number of the item on the Standing Order to the allegations.

7

The Rico Statement does not state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). A complaint must contain more than "labels and conclusions" Id at 678 and must assert a connection between the alleged wrongdoing and the injury allegedly suffered by the plaintiffs  Even if the named plaintiffs purport to represent a class they must allege and show that they personally have been injured and cannot rely on injury to an unidentified member of the purported class. Lewis v. Casey, 518 U.S 343, 357 (1996).

The RICO Statement fails to meet the liberal Ashcroft pleading standard, let alone the applicable heightened pleading standard of Rule 9(b), which provides in relevant part:  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. The RICO Statement reiterates the conclusory allegations of the complaint and then asserts that these violate various provisions of the RICO statute, essentially tracking the statutory language.  There is no listing of victims nor any statement about how any individual victim was injured  There are over 13,000 defendants, who are not listed, and it is alleged that they all engaged in the same purportedly illegal conduct.  There are tens of thousands of additional alleged wrongdoers: "Superintendents and other school administrators, school boards, school employees and contract workers. State Education Directors and other state education and other state administrators, responsible for the oversight and enforcement of federal and state regulations and laws." Rico Statement, p.22.  All of this is wholly insufficient to satisfy the pleading requirements.  The date of the predicate acts are March 2020 to the present. Id. p. 34 And so on.  It is wholly insufficient to meet the pleading standards.

However, what is offensive is that Plaintiffs' use the RICO statute to take what is a legal dispute between the parties, as to whether state and local officials may modify the manner of providing education and services to S.W.D.s, during the pandemic, and turn this disagreement into wholly conclusory allegations of wholesale misconduct and fraud by Defendants. Thus, seeking reimbursement for services provided remotely is worthless services fraud because the services are worthless )(Rico Statement, p. 29) and representing that related services which are being provided remotely are provided in accordance with the IDEA and Medicaid is a fraudulent representation. (Rico Statement, p. 27). It is submitted that this is an abuse of the RICO statute.

## CONCLUSION

For the reasons set forth in this memorandum of law and NYC Defendants' main memorandum of law filed on March 18, 2020, the Court should dismiss the complaint.

Dated: October 2, 2020
      New York, NY

>JAMES E. JOHNSON
>Corporation Counsel of the City of New York
>Attorney for *NYC Defendants*
>100 Church Street, Room 2-113 New York,
>NY 10007 Tel: (212) 356-0871
>mrichter @law.nyc.gov
>
>
>by: / s/ Marilyn Richter
>_____
>Marilyn Richter
>Mark G. Toews
>Janice Birnbaum
>Assistants Corporation Counsel