UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X

J.T., et al.,                                    :

             Plaintiffs,       :

      -against-                  :

Bill de Blasio, et al.,                     :

         Defendants.         :

---------------------------------------- X

CASE NO. 20-cv-05878 (CM)

**BRIEF IN SUPPORT OF OMAHA
PUBLIC SCHOOL DISTRICT'S
MOTION TO DISMISS**

       COMES NOW Defendant Omaha Public School District ("OPS"), which is putatively named as a defendant in the above-captioned action, and submits this Brief in Support of OPS's Motion to Dismiss.  For the reasons discussed below, OPS moves this Court to dismiss OPS and the claims asserted against it from this action under Rules 12(b)(1), (2), (3), and (6) of the Federal Rules of Civil Procedure.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES …………………………………………………………...3

INTRODUCTION ……………………………………………………………………...6

STATEMENT OF RELEVANT FACTS …………………………………………………6

ARGUMENT ………………………………………………………………………..7

I.   The Court Lacks Subject-Matter Jurisdiction Over the Plaintiffs' Claims Against OPS …7

   A.   The Plaintiffs Lack Article III Standing Because Their Injury is not Traceable to OPS …………………………………………………………………..7

   B.   The Plaintiffs Failed to Exhaust their Federal Administrative Remedies …………9

   C.   The Plaintiffs Failed to Exhaust the Administrative Remedies Provided by the Nebraska Special Education Act and Cannot Seek Judicial Review in Federal Court …………………………………………………………………9

II.   The Court Lacks Personal Jurisdiction Over OPS …………………………………10

   A.   There is No State-Law Statutory Basis for the Exercise of Personal Jurisdiction ...11

   B.   The Exercise of Personal Jurisdiction Does not Comport with Due Process …….12

   C.   OPS is Not Subject Nationwide Personal Jurisdiction ..……………………14

III.   The Plaintiffs Fail to State a Plausible Claim for Relief …………………………17

   A.   The Plaintiffs' Complaint States Insufficient Factual Allegations to Support Any Plausible Claim under Federal or Nebraska State Law …………………………..17

   B.   Nebraska's Sovereign Immunity Bars any Tort Claims Asserted by the Plaintiffs under Nebraska Law ………………………………………………………...18

IV.   The Court should Decline to Exercise Supplemental Jurisdiction over the Plaintiffs' Unspecified Claims under Nebraska Law …………………………………………18

V.   The Southern District of New York is not a Convenient Venue …………………19

CONCLUSION …………………………………………………………………………21

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………………………...17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) …………………………………………..17

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) …………………………………………19

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018) …..………………11, 13

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) …………………………11

*Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171 (S.D.N.Y. 2020) …………………………14

*Cook v. UBS Fin. Servs., Inc.*, No. 05 Civ. 8842 (SHS), 2006 WL 760284
(S.D.N.Y. March 21, 2006) …………………………………………………………19

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) …………………………16

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ……………………………………………………12

*Fry v. Naolean Cmty. Schs.*, 137 S. Ct. 743 (2017) ……………………………………………………9

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 104 F. Supp. 2d 279
(S.D.N.Y. 2000) …………………………………………………………………...19, 20

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130
(S.D.N.Y. 2018) …………………………………………………………………………14

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118 (2d Cir. 2006) …………………………18

*Larson by Larson v. Miller*, 76 F.3d 1446, 1456 (8th Cir. 1996) …………………………………18

*Licci v. Lebanese Canadian Bank*, 673 F.3d 50 (2d Cir. 2012) ………………....…………..11, 12

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) ………………16

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) ....…………………………………….8

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ……………………..14

*Norman v. Ogallala Pub. Sch. Dist.*, 609 N.W.2d 338 (Neb. 2000) ………………………………18

*Nu-Life Constr. Corp. v. Bd. Of Educ. Of City of N.Y.*, 779 F. Supp. 248 (E.D.N.Y. 1991) …….15

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478 (2d Cir. 2002) …….9

*Reich v. Lopez*, 858 F.3d 55 (2d Cir. 2017) …………………………………………………15, 16

*SM Kids, LLC v. Google LLC*, 963 F.3d 206 (2d Cir. 2020) …………………………………...7, 8

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)) …....………………………………………….8

*U.S. Bank Nat'l Assn. v. Bank of Am. N.A.*, 916 F.3d 143 (2d Cir. 2019) ………………………..13

*Walden v. Fiore*, 571 U.S. 277 (2014) …………………………………………………………13

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) …………………………13

## CONSTITUTIONS AND STATUTES

U.S. Const. art. III, § 2 …………………………………………………………………7-8

U.S. Const. amend. XIV …………………………………………………………………...10, 12

18 U.S.C. § 1341 ………………………………………………………………………15

18 U.S.C. § 1343 ………………………………………………………………………15

18 U.S.C. § 1965 …………………………………………………………………14, 16

29 U.S.C. § 794 ………………………………………………………………………6

20 U.S.C. § 1401 ………………………………………………………………………6

28 U.S.C. § 1367(c)(3) …………………………………………………………………...19

28 U.S.C. § 1404(a) ………………………………………………………………19, 20

42 U.S.C. § 1983 ………………………………………………………………………6

42 U.S.C. § 12101 ………………………………………………………………………6

Fed. R. Civ. P. 9(b) …………………………………………………………………...15, 16

Fed. R. Civ. P. 12(b)(1) ……………………………………………………………1, 7, 9, 20

Fed. R. Civ. P. 12(b)(2) ……………………………………………………………..1, 10, 16, 20

Fed. R. Civ. P. 12(b)(3) ……………………………………………………………...1, 20

Fed. R. Civ. P. 12(b)(6) …………………………………………………………………..1, 17, 18, 20

Fed. R. Civ. P. 21 …………………………………………………………………………...20

N.Y. C.P.L.R. § 302(a) …………………………………………………………………11

Neb. Rev. Stat. § 13-903 ………………………………………………………………18

Neb. Rev. Stat. § 13-905 ………………………………………………………………18

Neb. Rev. Stat. § 13-906 ………………………………………………………………18

Neb. Rev. Stat. § 13-910(2) …………………………………………………………...18

Neb. Rev. Stat. § 79-1110 ………………………………………………………………7, 9

Neb. Rev. Stat. § 79-1162 ………………………………………………………………10

Neb. Rev. Stat. § 79-1163 ………………………………………………………………10

Neb. Rev. Stat. § 79-1167 ………………………………………………………………10

**INTRODUCTION**

Indifferent to the procedural and practical impossibilities of their lawsuit, over one hundred disabled students and parents of disabled students ("Plaintiffs") filed this putative class action against thousands of individual school districts throughout the country (collectively, "Defendant School Districts"), every state's department of education, the New York City Department of Education, and two New York City officials (collectively, "Defendants"). The Plaintiffs allege that the Defendants' respective decisions to close their public schools during the COVID-19 pandemic denied their children a free and appropriate public education in violation of the Civil Rights Act, 42 U.S.C. § 1983; the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, et seq.; the Federal Rehabilitation Act ("FRA"), 29 U.S.C. § 794, et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; and unspecified provisions of every state's constitutional, statutory, and administrative law. Defendant OPS now moves the Court to dismiss it and the claims against it from this action.

**STATEMENT OF RELEVANT FACTS**

OPS is a public school district located in Omaha, Nebraska. The Plaintiffs served OPS with process on October 1, 2020. Not one of the Plaintiffs, however, ever attended an OPS school or even resided in Nebraska. *See* Compl., App. A, ECF No. 1-12. Still, the Plaintiffs named OPS as a defendant in this action. Compl., App. B, ECF No. 1-1 at 62.

The Plaintiffs' complaint alleges that as a result of their respective decisions to close public schools during the COVID-19 pandemic, Defendants denied the student Plaintiffs a free and appropriate public education by failing to provide the student Plaintiffs the special education services detailed in the students' individualized Education programs ("IEP"). This, the Plaintiffs claim, violates the Civil Rights Act, the IDEA, the FRA, the ADA, and unspecified provisions of

every state's constitution, statutes, and administrative regulations.  Compl., ECF No. 1 at 73-81.

They seek equitable, declaratory, and compensatory relief.  *Id*. at 81-2.

On September 2, 2020, the Court issued an Order to Show Cause, ordering the Plaintiffs to

address the Court's apparent lack of personal jurisdiction over the out-of-state Defendants, among

other things.  Order to Show Cause, ECF No. 84.  In an attempt to manufacture a basis for personal

jurisdiction, the Plaintiffs filed a RICO Statement, making highly implausible allegations that the

thousands of school districts are engaged in a continuous pattern of fraudulent, criminal activity.

*See* RICO Statement, ECF No. 121.  The Plaintiffs contemporaneously responded to the Order to

Show Cause on September 11, 2020, but provided no real basis for the Court to exercise personal

jurisdiction over the out-of-state Defendants, including OPS.  Pl.'s Resp. to Order to Show Cause,

ECF No. 122.  Now, having recently been served with process, OPS submits this Motion to

Dismiss on the several grounds discussed below.

## ARGUMENT

## I.   The Court Lacks Subject-Matter Jurisdiction Over the Plaintiffs' Claims Against OPS

The Court must dismiss the Plaintiffs' claims against OPS under Rule 12(b)(1) for lack of

subject-matter jurisdiction.  The Plaintiffs lack Article III standing to assert any of their claims

against OPS, they have failed to exhaust their administrative remedies with respect to their federal

claims, and they cannot seek judicial review of any claims under the Nebraska Special Education

Act, Neb. Rev. State. § 1110 et seq., in federal court.

### A.   The Plaintiffs Lack Article III Standing Because Their Injury is not Traceable to OPS

"A motion to dismiss for lack of Article III standing challenges the subject-matter

jurisdiction of a federal court and, accordingly, is properly brought under Fed R. Civ. P. 12(b)(1)."

*SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).  OPS's Rule 12(b)(1) motion challenges the Plaintiffs' Article III standing on the face of their complaint, meaning the Plaintiffs' complaint, including incorporated exhibits, must "allege facts that plausibly suggest [they] [have] standing to sue." *SM Kids, LLC*, 963 F.3d at 211.

Article III, section 2 of the U.S. Constitution imposes three standing requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

The Plaintiffs' complaint fails to satisfy the second standing requirement because it includes no allegations that a named Plaintiff's injury is traceable to OPS's challenged conduct. In *Mahon v. Ticor Title Insurance Company*, the Second Circuit concluded that the named class-action plaintiff lacked Article III standing to assert claims against "non-injurious" defendants — defendants who may have engaged in the same alleged conduct as the defendant that directly injured the plaintiff but who did not actually injure the named class-action plaintiff.  683 F.3d 59, 61, 65-66 (2d Cir. 2012).  The court rejected the class-action plaintiff's argument that "as long as the injurious defendant is sued in the same case, Article III does not prevent a plaintiff from suing non-injurious defendants."  *Id.* at 65-66.  The same Article III problem exists on the face of the Plaintiffs' complaint.  The Plaintiffs' claimed injury is the denial of a free and appropriate public education, but OPS never denied any of the Plaintiffs a free and appropriate education.  In fact, not one of the complaint's named Plaintiffs ever attended or currently attends an OPS school.  OPS is therefore a "non-injurious" defendant, and the Plaintiffs lack Article III standing to assert any of their claims against OPS.  *See id.* at 65.

**B.      The Plaintiffs Failed to Exhaust their Federal Administrative Remedies**

A plaintiff seeking relief available under the IDEA must first exhaust their administrative remedies, even when they pursue the relief under other laws like the ADA or FRA. *Fry v. Naolean Cmty. Schs.*, 137 S. Ct. 743, 750 (2017).  This exhaustion requirement "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002).  The "failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Id.* at 483.

With respect to the Plaintiffs' IDEA, FRA, and ADA claims against OPS, their complaint does not allege that they exhausted their administrative remedies.  How could it?  There are no allegations that any of the Plaintiffs ever attended an OPS school or even resided in Nebraska. Without factual allegations to that effect, the complaint cannot establish that the exhaustion requirement has been satisfied as to any of the Plaintiffs' federal claims against OPS. The Court must therefore dismiss those claims under Rule 12(b)(1).

**C.      The Plaintiffs Failed to Exhaust the Administrative Remedies Provided by the Nebraska Special Education Act and Cannot Seek Judicial Review in Federal Court**

The Plaintiffs purport to bring claims against OPS under unspecified Nebraska laws as well.  Presumably, they would argue they have viable claims under the Nebraska Special Education Act, Neb. Rev. State. § 1110 et seq., but as with their federal claims, they have failed to exhaust

their administrative remedies.  Moreover, they cannot seek immediate judicial review of any administrative proceeding under the Nebraska Special Education Act in federal court.

Section 79-1162 of Nebraska's Special Education Act authorizes parents, guardians, and competent students to "initiate a hearing on matters related to . . . the provision of a free appropriate public education" by filing a petition with the department of education.  Neb. Rev. Stat. § 79-1162. A hearing officer designated by the department of education, having exclusive original jurisdiction over such petitions, will then consider the petition.  Neb. Rev. Stat. § 79-1163.  Parties "aggrieved by the findings, conclusions, or final decision and order of the hearing officer" are entitled to seek judicial review, but they must do so in a Nebraska district court and only after properly presenting their petition to the hearing officer.  Neb. Rev. Stat. § 79-1167.

The Plaintiffs' complaint makes no attempt to allege compliance with Nebraska's exhaustion requirement.  And in any case, they simply cannot seek judicial review of the hearing officer's decision in federal court.  They must do so in Nebraska district court. Accordingly, the Court lacks subject-matter jurisdiction over the claims asserted by the Plaintiffs under Nebraska state law.

## II.     The Court Lacks Personal Jurisdiction Over OPS

The Court must dismiss OPS from this action under Rule 12(b)(2) of the Federal Rules of Civil Procedure because the Plaintiffs have made no showing that OPS is subject to the Court's personal jurisdiction — or any other out-of-state school district for that matter.  *See* Fed. R. Civ. P. 12(b)(2).  Specifically, the Plaintiffs have failed to show that exercising personal jurisdiction over OPS is permitted by New York's long-arm statute and comports with the Fourteenth Amendment's Due Process Clause.

To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff's complaint must make a prima facie showing of jurisdiction by "making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (alteration in original) (internal quotation omitted). "The plaintiff must have a state-law statutory basis for jurisdiction and demonstrate that the exercise of personal jurisdiction comports with due process." *Id.* at 82; *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

### A.    There is No State-Law Statutory Basis for the Exercise of Personal Jurisdiction

In relevant part, New York's long-arm statute allows courts to exercise personal jurisdiction over "any non-domiciliary" who "transacts any business within the state." N.Y. C.P.L.R. § 302(a). A person or entity "transacts business" in New York when it "purposefully avails itself of the privilege of conducting activities in New York, thereby invoking the benefits and protections of its laws." *Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 61 (2d Cir. 2012) (internal quotation marks omitted). "Not all purposeful activity, however constitutes a 'transaction of business'" for purposes of § 302(a). *Id.* at 62. Courts must evaluate the *quality* of a non-domiciliary defendant's contacts. *Id.* Further, it is not enough for the non-domiciliary defendant's New York contacts to exist in the abstract. Those contacts must *give rise to* the plaintiff's claims. *Licci*, 673 F.3d at 60.

The Plaintiffs' factual allegations do not establish that OPS transacts business in New York in any meaningful way or that their claims sufficiently relate to or arise out of any such activity. In their response to the Court's Order to Show Cause, Plaintiffs cite only tenuous and irrelevant contacts. *See* Pl.'s Resp. to Order to Show Cause, ECF No. 122 at 9. The Plaintiffs rely on

allegations that OPS accepts IDEA-related funds administered by New York-based institutions and that OPS's pension funds and bond investments are connected to New York-based financial institutions. *Id.*

Surely, these alleged contacts do not satisfy New York's long-arm statute. First, these are not, in any way, quality or meaningful contacts, and they are seriously lacking in basic detail. *See Licci*, 673 F.3d at 62. Merely accepting government funding that was, at some point, administered by institutions in New York or maintaining investments through New York companies hardly amounts to purposeful availment. It is, as the Court has already commented, laughable to suggest otherwise. *See* Order to Show Cause, ECF No. 84. Second, the Plaintiff's legal claims do not arise from either of these alleged contacts. *See id.* at 66 ("A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, *between the claim asserted and the actions that occurred in New York*.") (emphasis added) (internal quotation marks omitted). OPS's alleged bond investments and pension fund are completely irrelevant and unrelated to the Plaintiffs' legal claims. Likewise, the claims asserted in the Plaintiffs' complaint are not based, in any way, on OPS's alleged acceptance of IDEA-related funds administered by institutions in New York. Those claims arise out of OPS's allegedly unlawful decision to temporarily close certain schools *in Omaha* during the COVID-19 pandemic. There is therefore no state-law statutory basis for exercising personal jurisdiction over OPS.

      **B.**      **The Exercise of Personal Jurisdiction Does Not Comport with Due Process**

Exercising personal jurisdiction over OPS not only lacks a state-law statutory basis, it violates the Fourteenth Amendment's Due Process Clause.

The Supreme Court has recognized two types of personal jurisdiction — general and specific. Because the Plaintiffs' complaint alleges no facts upon which the Court could find that

OPS is essentially at home in New York, the Court need only assess the propriety of exercising specific personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 127-28 (2014). The exercise of specific personal jurisdiction comports with the Fourteenth Amendment's Due Process Clause where the plaintiff shows (1) the defendant "purposefully availed itself of the privilege of conducting activities within the forum" or "purposefully directed its conduct into the forum," (2) the plaintiff's claims "arise out of or relate to the defendant's forum conduct," and (3) the exercise of personal jurisdiction is "reasonable under the circumstances." *U.S. Bank Nat'l Assn. v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (internal quotations omitted).

The Plaintiffs' factual allegations establish none of these requirements. First, OPS in no way purposefully availed itself of the privilege of conducting activities in New York. In this regard, "[i]t is 'insufficient to rely on a defendant's random, fortuitous, or attenuated contacts . . . with the forum to establish specific jurisdiction." *Id.* (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016)). And even where a defendant's forum contacts are "intertwined with [its] transactions or interactions with the plaintiff or other parties . . .[,] a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 1123 (2014)). Thus, the Plaintiffs' reliance on nothing more than OPS's alleged random, attenuated contacts with third-party financial and governmental institutions in New York to establish personal jurisdiction is misguided and insufficient to establish purposeful availment. *See id.*

Second, as discussed above, the Plaintiffs' claims clearly do not arise out of OPS's alleged contacts with New York, i.e., financial investments with New York companies and accepting IDEA funds from New York-based institutions. Rather, the Plaintiffs' claims arise out of OPS's

decision to temporarily close its schools during the COVID-19 pandemic, conduct which has no meaningful relation to these alleged contacts with New York.  *See Id.* at 151.

Third, exercising personal jurisdiction over OPS would be unreasonable under the circumstances.  *Charles Schwab*, 883 F.3d at 82.  Assessing the reasonableness of exercising personal jurisdiction over an out-of-state defendant generally includes evaluating five factors. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).  However, rather than address each factor here, OPS contends it is clear that exercising of personal jurisdiction over it comes with far more burdens than benefits.  In fact, it is hard to imagine any benefit in forcing parties from Nebraska to litigate the details of IEPs and the effects of COVID-19-related school closures in New York.  *See id.*

Accordingly, the Plaintiffs have not only failed to show that New York's long-arm statute allows the Court to exercise personal jurisdiction, they have also failed to demonstrate that the exercise of personal jurisdiction over OPS comports with due process.

### C.      OPS is Not Subject Nationwide Personal Jurisdiction

Recognizing that the Court lacks personal jurisdiction over OPS under the traditional two-part analysis outlined above, the Plaintiffs' attempt to manufacture personal jurisdiction under the Racketeer Influenced and Corrupt Organizations Act's ("RICO") nationwide service of process statute.  18 U.S.C. § 1965; Pl.'s Resp. to Order to Show Cause, ECF No. 122 at 9-13.  This attempt must fail because the Plaintiffs come nowhere close to alleging a plausible civil RICO claim against OPS or any other school district.  *See Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 145-46 (S.D.N.Y. 2018) ("If a civil RICO claim is dismissed, that statute's authorization of a national personal jurisdiction analysis can no longer be relied upon.").

As an initial matter, because OPS and the other Defendant School Districts are municipal entities, they may not even be subject to the Plaintiffs' RICO claims, at least to the extent those claims seek damages.  *See Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 180 (S.D.N.Y. 2020) (citing *Nu-Life Constr. Corp. v. Bd. Of Educ. Of City of N.Y.*, 779 F. Supp. 248, 251 (E.D.N.Y. 1991).

In any case, however, the Plaintiffs' fall far short of pleading sufficient facts to state a civil RICO claim based on predicate acts of fraud.  "To establish a civil RICO claim, a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation."  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotation marks omitted).

The pattern of racketeering must include at least two predicate acts of racketeering.  *Id.* And where the plaintiff alleges fraud crimes as the requisite predicate acts, the plaintiff "must state with particularity the circumstances constituting fraud."  *Id.* (quoting Fed. R. Civ. P. 9(b)).  This means the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.  *Id.* A RICO plaintiff must also sufficiently allege that the defendant's predicate activity amounted to, or poses a threat of, *continuous* criminal activity.  *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017).

The Plaintiffs have not stated the alleged predicate fraudulent acts with particularity.  The Plaintiffs allege the Defendant School Districts, including OPS successfully carried out a fraudulent scheme to collect funds from the federal government and their respective state governments by intentionally creating sham IEPs for special education students.  This, the Plaintiffs allege, constitutes various forms of criminal fraud, including mail fraud and wire fraud

in violation of 18 U.S.C. §§ 1341, 1343.  Yet, they do not allege the circumstances constituting fraud with any degree of particularity.  They make only the broadest, most general allegations of fraud against thousands of school districts throughout the country without specifying which statements were false or misleading or identifying the individuals responsible for the statements. *See Lundy*, 711 F.3d at 119.  Nor do the Plaintiffs state when or where the alleged fraudulent statements were made.  *See id.*  The Plaintiffs simply cannot proceed against OPS on their RICO claim with such broad, bare-bones allegations of fraud.  *See id.* ("Bare-bones allegations do not satisfy Rule 9(b).").

The Plaintiffs have also failed to sufficiently allege continuity, i.e., that OPS's conduct "amounts to or poses a threat of continued criminal activity."  *Reich*, 858 F.3d at 60.  In fact, the Plaintiffs' allegations that OPS engaged in or threatens to engage in continuous criminal activity are so implausible that is clear the Plaintiffs' attempt to add RICO claims is purely strategic.  They claim RICO violations not because they believe OPS or any other school district in the country actually violated RICO, but because RICO provides for nationwide personal jurisdiction.  18 U.S.C. § 1965.  Regardless, the Plaintiffs' claims of continued criminal activity against OPS are not adequately supported by factual allegations, and the Court should be highly skeptical of these RICO claims.  *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) ("RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.").

The Plaintiffs have come nowhere close to stating a plausible RICO claim.  Therefore, the Court cannot rely on 18 U.S.C. § 1965 to exercise personal jurisdiction over OPS.  And because the Plaintiffs have otherwise failed to establish that exercising personal jurisdiction over OPS is

permitted by New York's long-arm statute and comports with due process, the Court must dismiss OPS from this action under Rule 12(b)(2).

### III.     The Plaintiffs Fail to State a Plausible Claim for Relief

The Court should also dismiss the Plaintiffs' complaint as against OPS under Rule 12(b)(6) because it fails to state a plausible claim for relief under either federal or Nebraska state law.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A.     The Plaintiffs' Complaint States Insufficient Factual Allegations to Support Any Plausible Claim under Federal or Nebraska State Law

As discussed above, the factual allegations in the Plaintiffs' complaint come nowhere close to stating a plausible RICO claim against OPS, or any other Defendant School District for that matter.  Those allegations also fail to state a plausible claim for relief under the IDEA, the FRA, the ADA, or Nebraska law.  As noted multiple times throughout this brief, the complaint does not allege that any one of the Plaintiffs ever attended an OPS school or ever resided in Nebraska.   It simply names OPS as a defendant among thousands of other public school districts throughout the country, and makes generalized, conclusory allegations that the Defendant School District, including OPS, violated state and federal law by closing their schools during the COVID-19 pandemic.  It fails, however, to allege that any of the Plaintiffs were affected by OPS's actions or decisions.  No court could make the reasonable inference that OPS is liable to the Plaintiffs based on these allegations.  *See Ashcroft*, 556 U.S. at 678.  This Court should therefore dismiss all claims asserted against OPS under Rule 12(b)(6).

**B.** **Sovereign Immunity Bars any Tort Claims Asserted by the Plaintiffs under Nebraska Law**

To the extent the Plaintiffs assert any tort claims against OPS, the Nebraska Political Subdivisions Tort Claims Act ("NPSTCA"), Neb. Rev. Stat. § 13-901 et seq., would bar those claims.

OPS is a political subdivision in Nebraska.  *See* Neb. Rev. Stat. § 13-903.  However, the Plaintiffs failed to allege they filed any tort claims with OPS or its governing body, a prerequisite to filing a court action against a political subdivision for any alleged torts.  Neb. Rev. Stat. § 13-905, § 13-906.  Additionally, such claims are barred by the discretionary function exception to the NPSTCA.  Neb. Rev. Stat. § 13-910(2).  Under the discretionary function exception, a "plaintiff may not recover for a claim 'based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused.'"  *Larson by Larson v. Miller*, 76 F.3d 1446, 1456 (8th Cir. 1996) (quoting Neb. Rev. Stat. § 13–910(2)).  The whole purpose of this exception, the Nebraska Supreme Court has said, "is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *Norman v. Ogallala Pub. Sch. Dist.*, 609 N.W.2d 338, 345 (Neb. 2000).  Thus, the NSPTCA requires dismissal of any tort claims under Rule 12(b)(6).

**IV.** **The Court should Decline to Exercise Supplemental Jurisdiction over the Plaintiffs' Unspecified Claims under Nebraska Law**

To the extent the Court has found adequate grounds to dismiss the Plaintiffs' federal claims against OPS but not their claims under Nebraska law, the Court should decline to exercise

supplemental jurisdiction over the Plaintiffs' unspecified claims under Nebraska law.  *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)).  Indeed, the Supreme Court has instructed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  If presented with this circumstance, the Court should not entertain the Plaintiffs' unspecified claims under Nebraska law.

## V.      The Southern District of New York is not a Convenient Venue

Venue may technically be proper in the Southern District of New York, but like the thousands of other Defendant School Districts, forcing OPS to litigate this case there would be seriously inconvenient.  Thus, to the extent the Court has not yet found grounds for dismissing OPS and the claims against it from this action entirely, the Court should sever the claims against OPS and transfer them to the District of Nebraska under Rule 21 and 28 U.S.C. § 1404(a).  *See Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 104 F. Supp. 2d 279, 287 (S.D.N.Y. 2000).

Venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."  28 U.S.C. 1391(b).  In putative class actions, courts "look only at the allegations pertaining to the named representatives."  *Cook v. UBS Fin. Servs., Inc.*, No. 05 Civ. 8842 (SHS), 2006 WL 760284, at *6 n.2 (S.D.N.Y.

March 21, 2006).  The Plaintiffs allege venue is proper in the Southern District of New York under

§ 1391(b)(3).

   While venue may be proper, the Court can still sever the claims against OPS and transfer

them to the District of Nebraska under Rule 21 and 28 U.S.C. §1404(a).  *See Hallwood Realty*

*Partners*, 104 F. Supp. 2d at 287 (explaining "Rule 21 of the Federal Rules of Civil Procedure

authorizes the severance of any claim against a party in order that it be transferred pursuant to

Section 1404(a) of the Judicial Code.").   This course of action is appropriate when "the

administration of justice would be materially advanced thereby."  *Id.* at 288 (internal quotation

marks omitted).  Four considerations control the analysis:

> (1) whether the issues sought to be tried separately are significantly different from
> one another, (2) whether the separable issues require the testimony of different
> witnesses and different documentary proof, (3) whether the party opposing the
> severance will be prejudiced if it is granted and (4) whether the party requesting the
> severance will be prejudiced if it is not granted.

*Id.*

   With these considerations in mind, it is clear the Court should sever and transfer any claims

against OPS that survive this motion.  The Plaintiff-students' IEPs and circumstances during the

COVID-19 pandemic will vary greatly, and attempting to address them all in one action would be

a procedural and practical nightmare.  An OPS student's IEP and circumstances will significantly

differ from most of the thousands of Plaintiff-students' IEPs and circumstances.  Further, though

the existence of one has not been alleged, it is hard to imagine how an OPS student-plaintiff would

be prejudiced by having to litigate in Nebraska, their home forum.  Yet, OPS would surely be

prejudiced if forced to litigate the claims against it among thousands of other student-plaintiffs and

school districts.  Severance and transfer of the OPS claims would therefore be appropriate.

## CONCLUSION

For the foregoing reasons, OPS respectfully requests that the Court grant OPS's Motion to Dismiss under Rules 12(b)(1), (2), (3), and (6) of the Federal Rules of Civil Procedure.

Dated: Omaha, Nebraska.                           Respectfully submitted,
       October 19, 2020
                                                  By: Jeremiah C. Hollembeak,


                                                  /s/ Jeremiah C. Hollembeak
                                                  Jeremiah C. Hollembeak,
                                                  Attorney for Defendant
                                                  Omaha Public School District

                                                  Baird Holm LLP
                                                  1700 Farnam Street
                                                  Suite 1500
                                                  Omaha, NE  68102-2068
                                                  402-344-0500


## CERTIFICATION

I certify that on October 19, 2020, I caused the foregoing Motion to Dismiss to be filed on the docket in the above-captioned case through the Court's Electronic Case Filing (ECF) System. In accordance with Section 9.1 of the SDNY Case Filing Rules & Instructions, service was completed when such filing triggered an automatic notification of electronic filing of the Motion to Dismiss to be sent to all counsel of record by electronic mail.  This filing can be accessed on the case docket via ECF.


                                                  /s/  Jeremiah C. Hollembeak


DOCS/2543588.5